UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRIAN HENRY PITTMAN, <br> PETITIONER | * <br> * <br> * | CIVIL ACTION <br><br> CASE NO.  23-cv-2071 |
| VERSUS | * <br> * | |
| KEITH COOLEY, WARDEN <br> RESPONDENT | * <br> * <br> * <br> * | SECTION "J" (2) |

**RESPONSE TO PETITION FOR *HABEAS CORPUS* RELIEF**

MAY IT PLEASE THE COURT:

Brian Henry Pittman is a state prisoner serving a twenty-five year sentence following his convictions for aggravated battery, attempted armed robbery, and simple burglary of an inhabited dwelling, and his subsequent adjudication as a habitual offender. He has petitioned this Court for a writ of habeas corpus.

Pittman's petition is timely, and his claims are exhausted. But his claims lack merit. The Court should therefore dismiss the petition with prejudice and otherwise deny relief.

## **TABLE OF CONTENTS**

PRELIMINARY MATTERS..................................................................................................3

      1.      Custody........................................................................................................3

      2.      The state court record.................................................................................3

      3.      The facts of the case...................................................................................3

      4.      The petitioner's claims...............................................................................4

PROCEDURAL HISTORY....................................................................................................5

TIMELINESS..........................................................................................................................6

EXHAUSTION & PROCEDURAL DEFAULT.....................................................................6

MERITS REVIEW..................................................................................................................6

      1.      Claim 1 – ineffective assistance of counsel "for failing to perform proper pre-trial investigation of DNA evidence." ....................................7

      2.      Claim 2 – ineffective assistance of counsel "for failing to challenge the alleged CODIS hit that led to the Lead. det. Providing false info in arrest warrant."..............................................................................9

CONCLUSION AND PRAYER............................................................................................11

CERTIFICATE OF SERVICE..............................................................................................12

PRELIMINARY MATTERS

1. **Custody.**

The respondent does not dispute that the petitioner is in custody.

2. **The state court record.**

The respondent has filed, along with this *Response*, the complete state court record which is described in the separately filed *Notice of Lodging of State Court Record Materials* (Rec. Doc. 15).

All references to the state court record materials are listed as "SCR" are references to the attachments to Rec. Doc. 15 (such that SCR Vol. 1 corresponds to ECF Doc. 15-1; SCR Vol. 2 corresponds to ECF Doc. 15-2, et cetera.). The page numbers refers to the PDF document page numbers which on occasion differ from the internal pagination from the state court record, as explained in the margin.[1]

3. **The facts of the case.**

The facts were summarized as follows on direct appeal:

> On March 29, 2015, around 6:00 p.m., Reed Umberger (the victim) was on his back patio grilling food at his Slidell residence when he was approached by the perpetrator, a male subject, who came from the street that ran along the left side of Umberger's property. As the perpetrator called out to get Umberger's attention, he walked quickly towards Umberger. Umberger, who did not know the perpetrator and did not want to talk to him, proceeded to enter into his residence to get a plate for the grilled food.
>
> When he came back outside, the perpetrator was on his patio. The perpetrator stated that he was lost and needed directions to get back to a main street. Umberger provided the perpetrator with directions to the interstate and the nearest main street, hoping he would then

---

1  The record on appeal (SCR Vols. 1-3) contains pages numbered 1-651, but also includes unnumbered pages such as the cover page and table of contents for each volume. Owing to these unnumbered pages, page of the record on appeal is the sixteenth of the state court record.

leave. However, the perpetrator kept repeating his request for directions. When Umberger looked down at the grill, the perpetrator forcefully struck him in the face, causing Umberger to be momentarily stunned. Umberger felt blood dripping down his face, as he regained his focus. At that point, he noticed that the perpetrator had an open, black pocket knife in his hand. The perpetrator stated, "Give me money." Umberger told the perpetrator to leave, but he refused to do so. Umberger ran from his backyard, through his house to the front door, and to his neighbor's house. He told his neighbor that he had been attacked and asked her to call the police.

The police and an ambulance arrived and Umberger was taken to the hospital where he received stitches for the injury to his face. The police discovered bottles of prescription medicine belonging to Umberger in the field behind his backyard, leading the police to conclude that the perpetrator had entered Umberger's residence after Umberger fled to his neighbor's residence for assistance. The police also seized a [Chicago Bulls] cap believed to have been left at the scene by the perpetrator. DNA samples from the cap were uploaded into the Combined DNA Index System (CODIS), and a match notification was generated identifying the defendant.

The police developed a photographic lineup that included a photograph of the defendant and showed the lineup to Umberger, who identified the defendant as the attacker. On July 11, 2016, after being advised of his *Miranda* rights and signing a waiver of rights form, the defendant confessed during a police interview. DNA swabs collected from the defendant at the time of the interview were sent to the St. Tammany Parish Coroner's Office for scientific analysis. According to Tara Brown Johnson, a forensic DNA analyst at the St. Tammany Parish Coroner's Office, the lab tests, in part, showed that the defendant's DNA was consistent with the major donor of a DNA sample collected from the cap. At trial, Umberger identified the defendant in court and identified the cap as the one worn by the defendant at the time of the incident.

*State v. Pittman*, 19-0121 (La. App. 1 Cir. 9/27/19), 2019 WL 4731643, at *1-2.

    4.    **The petitioner's claims.**

Pittman raises two claims of ineffective assistance of counsel. The first claim is that counsel failed to "perform proper pre-trial investigation of DNA evidence."

The second claim is that counsel failed "to challenge the alleged CODIS hit that led to the lead det. Providing false info in arrest warrant." Rec. Doc. 1, pp. 5-7.

## PROCEDURAL HISTORY

*Proceedings leading to conviction and sentence.*     The district attorney, on February 21, 2017, charged petitioner Brian Henry Pittman with one count aggravated battery, one count armed robbery, and one count simple burglary of an inhabited dwelling. State Court Record, Volume 1, pg. 58.

The trial was held from October 23-25, 2017, and resulted in verdicts of guilty as charged for all three charged offenses. Three of the verdicts were unanimous; one was rendered by 11-1 vote. SCR Vol. 1, pp. 26-42 (minute entries), *id.* at 158-160 (verdict forms). Ultimately the court sentenced the petitioner to twenty five years at hard labor as a second felony offender. SCR Vol. 1, pp. 52-53.[2]

*Direct review proceedings.*     The First Circuit Court of Appeal affirmed the petitioner's convictions and sentences on September 27, 2019, and the Louisiana Supreme Court denied writs on October 21, 2019. *State v. Pittman*, 19-0121 (La. App. 1 Cir. 9/27/19), 2019 WL 4731643, *writ denied*, 19-1849 (La. 1/28/20), 291 So.3d 1055. SCR Vol. 5. Pittman did not seek review from the U.S. Supreme Court. Rec. Doc. 1, pg. 2 (answer to Question 9h).

*Collateral review proceedings.*     Pittman applied for post-conviction relief on August 17, 2020. SCR Vol. 6, pp. 47-54. The trial court denied relief on November 8, 2021. *Id.*, pg. 120. Pitmman timely applied for supervisory review from both the First

---

[2] The court imposed sentence as follows: ten years for Count 1, twenty-five years for Count 2, and ten years for Count 3. Because the sentences are being served concurrently, the respondent for the sake of simplicity describes the sentences as being a twenty-five year sentence.

Circuit Court of Appeal and the Louisiana Supreme Court; both courts denied relief, with the final denial of relief occurring on March 28, 2023. SCR Vols. 7-8.

The instant habeas corpus petition is dated May 4, 2023. Rec. Doc. 1, pg. 14.

## TIMELINESS

The respondent does not allege that the petitioner's application is untimely.

## EXHAUSTION & PROCEDURAL DEFAULT

The respondent does not allege that the either of the petitioner's claims are unexhausted or in procedural default.

## MERITS REVIEW

Pittman's claims were adjudicated on the merits: the Louisiana Supreme Court ruled that Pittman "fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*...." SCR Vol 8, pg. 2.

Because Pittman's claims were adjudicated on the merits, his habeas corpus petition "shall not be granted … unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

The Court is familiar with AEDPA's standards governing merits review. The respondent therefore need not and does not expound upon those standards.

1.  **Claim 1 – ineffective assistance of counsel "for failing to perform proper pre-trial investigation of DNA evidence."**

The petitioner's first claim reads in full as follows:

> Trial counsel failed to hire a DNA expert (after stating that they would) to analysis the key piece of State evidence (a Chicago Bulls hat) which contained two hair samples that were removed from the hat but was not tested by the state. The DNA evidence would have definitively proven that petitioner was not present on the scene of the alleged robbery and would have identified the perpetrator of the crimes for which petitioner was found guilty. The analysis performed on the samples from the cap could not positively identify petitioner but petitioner could not be excluded from the sample tested. The results from the sample showed a major donor from the Hispanic community and petitioner is African American. Testing by counsel would have definitively ruled petitioner out as a donor of DNA on the only evidence from the scene.

Rec. Doc. 1, pg. 5.

    A.    **Additional context facts concerning this claim.**

As noted in the summary of the facts of the case, the offense occurred at victim Reed Umberger's place of residence, and after the commission of the offense a Chicago Bulls cap was found on the scene (pp. 3-4 above). *See also* SCR Vol. 3, pg. 67-68 (testimony concerning the recovery of the cap); SCR Vol. 3, pp. 161-162 (testimony concerning scientific examination of the hat).

There were indeed two hairs recovered from the hat. SCR Vol. 3, pg. 161 (lines 24-28). Contrary to the petitioner's representation, the hairs were tested— they simply yielded no usable results. *See* SCR Vol 1, pp. 83-84, particularly ¶ 5 (the hairs "failed to produce profiles due to insufficient or excessively degraded DNA"); SCR Vol 1, pp. 72-73, particularly ¶ 4 (same).

The petitioner states that "[t]he analysis performed on the samples from the cap could not positively identify petitioner but petitioner could not be excluded from the sample tested." This is correct.

### B.     Analysis.

The premise of petitioner's argument is that there were "two hair samples that were removed from the hat but … not tested." The petitioner then claims that, *had* the hair been tested, it "would have definitively proven that petitioner was not present on the scene" and "would have identified the perpetrator of the crimes."

The premise of the petitioner's claim is false. The hair was tested, and the testimony yielded no usable results. *See* SCR Vol 1, pp. 83-84, particularly ¶ 5 (the hairs "failed to produce profiles due to insufficient or excessively degraded DNA"); SCR Vol 1, pp. 72-73, particularly ¶ 4 (same).

Even if the hair had not been tested, the petitioner offers nothing beyond his own wishful thinking to demonstrate that testing "would have definitively proven that petitioner was not present on the scene" and "would have identified the perpetrator of the crimes." For that reason, the state courts did not err —much less make the sort of error correctable under AEDPA—when they concluded that the petitioner failed to meet his burden of proof. *See, e.g., Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir.1994) ( "without a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland*'s standards").

There is no merit to this claim.

> 2. **Claim 2 – ineffective assistance of counsel "for failing to challenge the alleged CODIS hit that led to the Lead. Det. Providing false info in arrest warrant."**

The petitioner's first claim reads in full as follows:

> GROUND TWO: Ineffective Assistance of Trial counsel in violation of the 6th Amendment to the U.S. Const. for failing to challenge the alleged CODIS Hit that led to the Lead Det. Providing false info in arrest warrant. (a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): The lead Detective, Timothy Crabtree, stated that he created a six-pack photo line-up containing Petitioner on April 8, 2016, only after receiving an alleged CODIS "Hit." Det. Crabtree authored an arrest warrant on May 2, 2016 stating that his basis for probable cause was a notification he received from STPCO that a CODIS Hit existed containing Petitioner's information but the notification was received on April 18, 2016.
>
> This is a ten (10) day difference between Det. Crabtree making the six-pack lineup on April 8 and him receiving the notification of a CODIS Hit on April 18. This was testified to at trial that the six-pack lineup was created on April 8 but at not time was clarity provided on the date that was included in the affidavit for the arrest warrant.

Rec. Doc. 1, pp. 6-7.

> A. **Additional context facts concerning this claim.**

This claim involves the investigation conducted by St. Tammany Parish Sheriff's Office Detective Timothy Crabtree. *See* SCR, Vol. 6, pp. 108-119 (police report authored by Det. Crabtree); *id.* at 104-105 (application for arrest warrant authored by Det. Crabtree); *then see* SCR Vol. 3, pp. 121-132 (trial testimony of Det. Crabtree).

The arrest warrant affidavit submitted by Detective Timothy Crabtree states in pertinent part that:

> On *April 18, 2016*, Detective Crabtree received notification through the St. Tammany Parish Coroner's Office that a specimen collected from [a Chicago Bulls cap found inside of the victim's residence that did not belong to the victim] produced a CODIS Database (DNA) match. The match was noted to belong to Brian Pittman B/M 4/1/1983.

> As a result, Detective Crabtree prepared a photo identification line-up, which contained the image of Brian Pittman positioned in image number five of six total photographs. On April 27, 2016, Detective Crabtree presented the line-up to the victim....

SCR, Vol. 6, pg. 105.

However, Detective Crabtree's supplemental report indicates that he prepared the photo identification lineup on *April 8, 2016*, then contacted the victim, and ultimately displayed the lineup to the victim on April 27, 2016. SCR, Vol. 6, pg. 115.

At the trial, Detective Crabtree testified that he prepared the photographic identification lineup on *April 8, 2016*. SCR Vol. 3, pg. 123 (line 4).

**B.    Analysis.**

The petitioner's burden is to show deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, *supra*).

The evidence at trial shows that the victim identified the petitioner as the perpetrator as a result of the photographic lineup compiled by Detective Crabtree. Petitioner complains that trial counsel failed to direct the jury's attention to a discrepancy about *when* the photographic lineup was *created*. That discrepancy

appears to be the result of a clerical error—either the lineup was created on the 18th and Detective Crabtree mistakenly left out the "1" when preparing his police report, or the lineup was created on the 8th and Detective Crabtree mistakenly added a "1" when drafting the arrest warrant affidavit. Either way, there is no question that the lineup was created, and shown to the victim, and that the victim positively identified the petitioner as the perpetrator of the offense.

It is not reasonably probable that the outcome of the trial would have been different had the jury been informed that Detective Crabtree made a typo. Petitioner fails to show deficient performance (because counsel could reasonably conclude that the discrepancy in dates was immaterial) and also fails to show prejudice (because the discrepancy was indeed immaterial).

There is no merit to this claim.

## CONCLUSION AND PRAYER

The petitioner fails to demonstrate that he is entitled to habeas corpus relief. The respondent respectfully prays that the Court dismiss the instant petition with prejudice and otherwise deny relief.

Respectfully Submitted,

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney,
   22nd Judicial District
701 Columbia Street
Covington, Louisiana 70433
Tel: (985) 809-8398

<u>CERTIFICATE OF SERVICE</u>

 I hereby certify that a copy of the foregoing has been served upon petitioner by mailing a copy, postage pre-paid, to:

>Brian Henry Pittman, DOC # 583397
>Allen Correctional Center
>3751 Lauderdale Woodyard Road
>Kinder, LA 70648
>*Petitioner, pro se*

This the <u>8th</u> day of <u>September</u>, 20<u>23</u>, at Covington, Louisiana.

            <u>/s/ Matthew Caplan</u>
            Matthew Caplan, #31650
            Assistant District Attorney