COPY OF MEMORANDUM IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT
TO 28 U.S.C. § 2254 THAT WAS FILED WITH WESTERN DISTRICT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

BRIAN HENRY PITTMAN #583397   CIVIL ACTION Nº.:

VERSUS                        DISTRICT JUDGE:

KEITH COOLEY, WARDEN          MAGISTRATE JUDGE:


MEMORANDUM IN SUPPORT OF PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

To The Honorable Judge of Said Court:

Comes now Brian Henry Pittman, Nº. 583397, pro se, and respectfully files this memorandum in support of petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This § 2254 petition is timely filed under § 2244(d)(1)(A).

I.
INTRODUCTION

The effective assistance of counsel is paramount to ensuring fairness in the criminal justice system and is guaranteed by the Sixth Amendment to the U.S. Constitution. Trial counsel in this case proved to be ineffective concerning contaminated DNA evidence, its presentation at trial, and its implication of Mr. Pittman. There was a hat recovered from the scene of an alleged robbery, which was later tested by the St. Tammany Parish Coroner's Office ("STPCO"). This hat contained DNA from a major donor (0.18%) who was from the Hispanic community. Mr. Pittman—the defendant in this case—is African

1

American. This alleged hat also contained biological material in the form of two (2) hair strains that were never investigated by counsel. Counsel relied solely on the testing provided by the State to the detriment of Mr. Pittman. DNA analysis requires the expertise of someone with specialized training. Trial counsel lacked this training prompting the need for an expert. This is especially true in a case where there is contaminated evidence. Additionally, Mr. Pittman was made a suspect and arrested based on this faulty DNA testing or the lack thereof. Lead Detective Timothy Crabtree ("Det. Crabtree") claimed to have added Mr. Pittman to a photographic lineup—which was later shown to the victim—only after receiving the "CODIS Hit" from the DNA testing performed by STPCO. A deeper investigation revealed that Det. Crabtree prepared the photographic lineup ten (10) days prior to receiving the alleged "CODIS Hit." Probable cause for the arrest warrant drafted by Det. Crabtree was based on the "CODIS Hit." How could that be when the photo lineup shown to the victim was produced before the "CODIS Hit" was received? How was Mr. Pittman developed as a suspect when no description was provided by the victim of the perpetrator and there was no physical evidence tying Mr. Pittman to the scene of the crime? Counsel made a decision to not challenge this at trial. Was this a tactical decision, a lack of investigation or a mere oversight? In the absence of trial strategy, the lack of proper

investigation amounts to ineffective assistance of counsel under the two-prong standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Trial counsel's performance fell below the standard for professional conduct as the need to investigate goes to the foundation of the expectation of competent representation. Mr. Pittman can show injury due to the DNA evidence being the State's only evidence allegedly connecting him to the crime. The standard of reasonable doubt is the highest level of proof required in a criminal proceeding. It would have been reasonable for the jury to doubt Mr. Pittman's involvement in this crime had the contaminated DNA evidence been properly challenged and excluded by the effective assistance of trial counsel.

    Expansion of the record is needed when the court is presented with issues of fact that cannot be resolved by the submitted record alone. An attorney's judgment call to investigate or not falls within this need. An evidentiary hearing should have been ordered by the trial court and later the appellate courts. Both state and federal jurisprudence has continually ruled against decisions to deny a post-conviction application [an application for collateral review] without an evidentiary hearing when the record is insufficient. Mr. Pittman asks that this Honorable Court grants this habeas corpus on the grounds that trial counsel provided ineffective assistance or in

the alternative, set the matter for an evidentiary hearing where the record could be expanded with additional evidence.

## II.
## STATEMENT OF THE CASE

On February 21, 2017, Brian Henry Pittman ("Mr. Pittman"), was charged by bill of information with one count of aggravated battery, a violation of La. R.S. 14:34; one count of attempted armed robbery, a violation of La. R.S. 14:27/14:64; and one count of simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2. Mr. Pittman pled not guilty to all counts. After a trial by jury, Mr. Pittman was found guilty on all counts. The trial court denied Mr. Pittman's motions for post-verdict judgment of acquittal and a new trial. Mr. Pittman stipulated to being a second felony habitual offender on all counts and was sentenced to ten (10) years, twenty-five (25) years, and ten (10) years, respectively, at hard labor without the benefit of probation or suspension of sentence to be served concurrently with each other.

On September 27, 2019, Mr. Pittman's convictions and sentences were affirmed on appeal by the Court of Appeal, First Circuit. See State v. Pittman, unpub. opinion, 2019-0121, 2019 WL 4731643 (La.App. 1 Cir. 9/27/19). On September 23, 2020, Mr. Pittman filed an Application for Post-Conviction Relief ("APCR")

4

with the 22nd Judicial District Court.[1] The State's response was filed on October 20, 2021.[2] The APCR was summarily denied on November 8, 2021.[3] Mr. Pittman timely filed an Application for Supervisory Writs that was subsequently denied without opinion on July 18, 2022.[4] A Writ of Certiorari was file with the Louisiana Supreme Court arguing the same claims and subsequently denied. State v. Pittman, 2022-01387 (La. 3/28/23), 358 So.3d 499. This § 2254 is timely field under § 2244(d)(1)(A).

### III.
### ARGUMENT AND ANALYSIS

A. PURSUANT TO THE U.S. SIXTH AMENDMENT, WHICH GUARANTEES THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, MR. PITTMAN DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

   1. Counsel failed to investigate the alleged "CODIS Hit" reported by the St. Tammany Parish Corner's Office.

Pro-se complaints are held to a less stringent standard than formal pleadings drafted by lawyers. "Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in habeas corpus proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession." See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed. 652 (1972) (per curiam);

---

[1] See Appendix A - Copy of Application for Post-Conviction Relief with Memo in Support
[2] See Appendix B - Copy of State's Response to APCR
[3] See Appendix C - Copy of Order Denying APCR
[4] See END - Copy of Judgment denying writ application

5

See also Price v. Johnston, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92. L.Ed. 1356 (1948), overruled on other grounds by McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

In this case, the St. Tammany Parish Coroner's Office (STPCO) completed—what appears to be—two Scientific Analysis Reports on April 28, 2017, (one time stamped 9:46 a.m. and another timestamped 9:47 a.m. on April 28, 2017), which detailed the results of a DNA analysis performed on several specimens, which included the DNA of Mr. Pittman. See Appendix D - STPCO DNA Analysis Report- April 28, 2017-9:46am; See also Appendix E - Copy of STPCO DNA Analysis Report - April 28, 2017 - 9:47a.m. The Scientific Analysis Report with a timestamp of April 28, 2017, 9:46 a.m., shows -- in the Results and Interpretations Section -- that DNA profiles were obtained from the swabs of inside and bill of hat (Exhibits 1A and 1B, respectively), portions of the manufacturer's tag and sweatband (Exhibit 1D), and Brian Pittman (Exhibit 5A). See Appendix D, supra at pg. 1. Numbers 4, 5, and 6 state that no inclusion can be made regarding any of the samples tested against the DNA of Mr. Pittman. See Appendix E, supra at pg. 2.  The Scientific Analysis Report with a timestamp of April 28, 2017, 9:47 a.m. (just a minute later), number 5 from the Results and Interpretations Section states in pertinent part, as follows:

6

"[t]he major DNA donor haplotype obtained from the swab of bill of hat (Exhibit 1B; previously reported 3/18/16) was consistent with the haplotype obtained from the swab from Brian Pittman (Exhibit 5A). Therefore, Brian Pittman and all male relatives along his paternal lineage cannot be excluded as the major donor of this sample." Id. The discrepancy lies in number 6 from the Results and Interpretations Section, which states in pertinent part: "[b]ased on the database frequency of the major DNA donor Y-STR haplotype obtained from the swab bill of hat (Exhibit 1B; previously reported 3/18/16), approximately <u>0.15% African American population</u>, 0.07% Caucasian population and <u>0.18% of the Hispanic population</u> cannot be excluded as donors of the sample." Id. (emphasis added). Based on the findings of STPCO, a larger majority of the Hispanic population presented in the sample tested. Mr. Pittman is African American with no Hispanic roots. The portion of the cap that would be furthest away from a person's body (bill of hat, Exhibit 1B) is found to contain DNA. The manufacturer's tag and the sweatband (Exhibit 1D) and inside of hat (Exhibit A) – which are the closest to an individual's body – contained no DNA from Mr. Pittman. This lack of DNA is true in both tests that were performed.

This is significant in a case where trial counsel knew that the evidence from the scene was contaminated and that it could not be determined "whose DNA that is [on the bill of the hat] or

7

where it came from." See Appendix F - Copy of Trial Transcript, pg. 47, lines 6-16. The State conceded that the evidence was indeed contaminated. Id. at pg. 48, lines 16-18. Another point to take into consideration is the fact that Mr. Pittman was charged with simple burglary of an inhabited dwelling and allegedly rummaged through the victim's house but no DNA was recovered from any items in the victim's home only this mystery hat that was found in the kitchen after being seen outside the home. Biological evidence in the form of two (2) hair samples were taken from the Bulls cap. Trial counsel did not consult an expert in this case concerning the DNA evidence. Relying only on the State's testing does not constitute proper investigation. Definitive proof of exclusion of Mr. Pittman should have been of paramount importance to counsel. Mr. Pittman's defense centered around not knowing or ever having any interactions with the victim.

An investigation by trial counsel of the DNA collected would have allowed counsel to definitively exclude Mr. Pittman from any of the quantitative and qualitative tests that the STPCO showed potentially included Mr. Pittman or from which Mr. Pittman could not be excluded. Also, an investigation would have uncovered the unscrupulous methods used in producing the results from the DNA examinations using evidence that was already contaminated. Cross-examining the forensic scientist Tara Brown

8

Johnson alone could not cure the lack of an independent investigation. A Motion to Suppress the only evidence that allegedly ties Mr. Pittman to this crime was warranted in this case. A failure to properly investigate the DNA evidence and have the evidence suppressed prejudiced Mr. Pittman and this failure should not be judged as trial strategy due to counsel's lack of investigation. The United States Supreme Court has stated, "… counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland does not require us to defer to decisions that are uninformed by an adequate investigation into the controlling facts and law." Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The U.S. Fifth Circuit has recognized that adequate investigation is a requisite of effective assistance. "… [C]ourt-appointed counsel ha[s] a duty to interview potential witnesses and make an independent examination of the facts, circumstances, pleadings and laws involved." Rummel v. Estelle, 590 F.2d 103, 104 (5th Cir. 1979).

2. Counsel failed to investigate Lead Detective Timothy Crabtree's statement that he created a six-pack photographic lineup on April 8, 2016, with Mr. Pittman in the lineup, only after the "CODIS Hit," but the accompanying arrest warrant states that the "CODIS Hit" came back on April 18, 2016.

Lead Detective Timothy Crabtree ("Det. Crabtree") authored an arrest warrant on Monday, May 2, 2016, stating that his basis for probable cause to have Mr. Pittman arrested was due to the victim identifying Mr. Pittman in a six-pack photographic lineup on April 27, 2016. Det. Crabtree stated in the affidavit that the six-pack photographic line-up that was shown to the victim was produced following an April 18, 2016, notification received from STPCO that a CODIS Database (DNA) match belonged to Brian Pittman B/M 4/1/1983. See Appendix G – Copy of Application for Arrest Warrant, pg. 2.

Det. Crabtree lied under oath to the Honorable Judge August J. Hand ("Judge Hand") about the date that the six-pack photographic lineup was produced. Det. Crabtree is quoted stating:

> On <u>April 18, 2016</u>, Detective Crabtree received notification through the Saint Tammany Parish Coroner's Office that a specimen collected from the aforementioned cap produced a CODIS Database (DNA) match. The match was noted to belong to Brian Pittman B/M 4/1/1983. <u>As a result</u>, Detective Crabtree prepared a photo identification line-up, which contained the image of Brian Pittman, positioned in image number five of six total photographs....

<u>Id.</u> (Emphasis added).

What Det. Crabtree failed to communicate is that the six-pack photographic lineup was actually prepared ten (10) days earlier on Friday, April 8, 2016. The State – in their response to Mr. Pittman's APCR – stated that the discrepancy in dates is

10

due to a "typographical error". See Appendix B – State's Response to APCR, pg. 9. Typographical errors can be clarified through an explanation of how the error was committed, if the opportunity for clarification is given. The opportunity for clarification presented itself when Det. Crabtree testified at trial that the six-pack photographic lineup was prepared on April 8, 2016. See Appendix F, supra at pg. 122, lines 4-8. At no time during his testimony did Det. Crabtree look to clarify the information presented in the application for arrest warrant that he authored. There was no discussion as to the difference in dates between when the alleged 'CODIS Hit' was delivered to him by STPCO and his rendering of a six-pack photo lineup. Neither the State nor the Defense looked to provide clarity. This confirms what Det. Crabtree wrote in the supplemental narrative prepared for this case that stated:

> [b]ased on the aforementioned information pertaining to the investigation, Detective Crabtree prepared a six-picture photo identification line-up, which contained the image of Brian Pittman in position number five. <u>The lineup was completed on Friday, April 8, 2016</u>. Upon completion of the line-up, Detective Crabtree contacted Umberger by phone on April 8, 2016, and requested to meet with him at the Saint Tammany Parish Sheriff's Office Slidell Law Enforcement Complex (LEC) to speak about the incident, to which he agreed.

See Appendix H – Copy of Supplement Report, pg. 8 (emphasis added).

Proper investigation by trial counsel into the discrepancy between the date of the CODIS Hit and the creation of the six-

11

pack lineup would have led counsel to file a Motion to Quash the Arrest Warrant pretrial. As argued in issue 1(A), counsel was aware that the DNA is this case was faulty. Since Det. Crabtree based the affidavit's probable cause on the CODIS Hit, probable cause should have been challenged because Det. Crabtree failed to disclose any facts upon which the existence of probable cause could have been found if the erroneous CODIS Hit is excised from the affidavit. Det. Crabtree explains in the supplemental narrative how Aaron Cowart was developed as a possible suspect but nowhere in the narrative is it explained how Mr. Pittman was developed as a suspect with the exception of the six-pack lineup and the victim's subsequent identification of Mr. Pittman. No identifying features of Mr. Pittman was given by the victim. No other physical evidence tying Mr. Pittman to the crime was discovered. Because the arrest warrant was never challenged, it cannot be determined what additional information – if any – was provided to Judge Hand by Det. Crabtree to secure the arrest warrant whether verbally or in writing. Although counsel filed motions to suppress statement and a motion to suppress identification, no motion was filed to challenge the arrest warrant and the finding of probable cause. Mr. Pittman was prejudiced by counsel's failure to file a motion to quash the arrest warrant because the arrest warrant set off a chain of events that deprived Mr. Pittman of his constitutionally

protected right to life, liberty, property, due process and equal protection of the law. See U.S. Const. Amend. 5 and 14; See also La. Const. of 1974 Article 1 § 2. The Fourth Amendment to the U.S. Constitution provides, "… no warrant shall issue, but upon probable cause, supported by oath or affirmation …" The Louisiana Constitution of 1974 Article 1 § 5 echoes this same requirement.

In evaluating counsel's performance, the Supreme Court has long referred to the American Bar Association ("ABA") Standards for Criminal Justice as "guides to determining what is reasonable." Rompilla v. Beard, 545 U.S. 374, 387, 125 S.Ct. 2456, 2466, 162 L.Ed.2d 360 (2005); Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2004); and Strickland, 466 U.S. at 688. "A conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Id. At the same time, a reviewing court is "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decisions at all." Moore v. Johnson, 194 F.3d 586, 604 (5th Cir. 1999) (superseded by statute). The Louisiana Constitution of 1974, Article 1 § 13 and the Sixth

Amendment of the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970) (6th Amendment right to counsel is right to effective assistance of counsel); State v. Harris, --So.3d--, 2020 WL 3867207, 2018-1012, (La.7/9/20). The sixth amendment right to effective assistance of counsel is made applicable to the states through the fourteenth amendment. See Gideon v. Wainwright, 372 U.S. 335, 9 L.Ed.2d. 799, 83 S.Ct. 792 (1963). Claims of ineffective assistance of counsel are reviewable under a two-prong test set forth by the supreme court in Strickland v. Washington, 466 U.S. at 687-688, adopted by the State of Louisiana in State v. Fuller, 454 So.2d 119 (1984); State v. Washington, 491 So.2d 1337, 1339 (La. 1986). To show ineffective assistance of counsel, petitioner must show counsel's performance was deficient and that deficiency caused prejudice. To show prejudice, petitioner must show a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Strickland, supra. There must be a showing that there is a reasonable probability that counsel error undermined the proper functioning of the adversarial process. State v. Mathis, 970 So.2d. 505, 509 (La. 2007) *citing*, Strickland, supra.

IV.

## CONCLUSION AND PRAYER

Mr. Pittman was denied the effective assistance of trial counsel in this case and was prejudiced by counsel's decision to not effectively investigate the contaminated DNA evidence, which resulted in a questionable "CODIS Hit" and to challenge the discrepancies presented by Lead Det. Crabtree and his authoring of an invalid arrest warrant due to its lacking probable cause.

In the interest of justice, Mr. Pittman prays that this Honorable Court grants this Writ of Habeas Corpus finding that the state courts' decision is contrary to or involves an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Alternatively, Mr. Pittman prays that an evidentiary hearing be granted where the record could be expanded and additional evidence presented to support the claim of ineffective assistance of trial counsel.

Respectfully submitted this 4th day of May, 2023, at Kinder Louisiana.

Brian Henry Pittman, N°. 583397
Allen Correctional Center
3751 Lauderdale Woodyard Rd.
Kinder, LA 70648