UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BRIAN HENRY PITTMAN                                    CIVIL ACTION

VERSUS                                                           NO. 23-2071

KEITH COOLEY, WARDEN                               SECTION "J"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases. Upon review of the entire record,[1] I have determined that a federal evidentiary hearing is unnecessary.[2] For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

Petitioner, Brian Henry Pittman, is a convicted inmate incarcerated in the Allen Correctional Center in in Kinder, Louisiana.[3] On February 21, 2017, Pittman was charged by a bill of information in St. Tammany Parish with aggravated battery, attempted armed robbery, and

---

[1] The State electronically filed the record at ECF Nos. 15, 15-1, 15-2, 15-3, 15-4, 15-5, 15-6, 15-7, and 15-8.

[2] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id*. § 2254(e)(2)(B).

[3] ECF No. 1 at 1.

simple burglary of an uninhabited dwelling.[4]  Pittman pled not guilty on March 8, 2017.[5]  The

Louisiana First Circuit Court of Appeal summarized the established facts as follows:

> On March 29, 2015, around 6:00 p.m., Reed Umberger (the victim) was on his back patio grilling food at his Slidell residence when he was approached by the perpetrator, a male subject, who came from the street that ran along the left side of Umberger's property.  As the perpetrator called out to get Umberger's attention, he walked quickly towards Umberger.  Umberger, who did not know the perpetrator and did not want to talk to him, proceeded to enter into his residence to get a plate for the grilled food.

> When he came back outside, the perpetrator was on his patio.  The perpetrator stated that he was lost and needed directions to get back to a main street.  Umberger provided the perpetrator with directions to the interstate and the nearest main street, hoping he would then leave.  However, the perpetrator kept repeating his request for directions.  When Umberger looked down at the grill, the perpetrator forcefully struck him in the face, causing Umberger to be momentarily stunned.  Umberger felt blood dripping down his face, as he regained his focus.  At that point, he noticed that the perpetrator had an open, black pocket knife in his hand.  The perpetrator stated, "Give me money."  Umberger told the perpetrator to leave, but he refused to do so.  Umberger ran from his backyard, through his house to the front door, and to his neighbor's house.  He told his neighbor that he had been attacked and asked her to call the police.

> The police and an ambulance arrived and Umberger was taken to the hospital where he received stitches for the injury to his face.  The police discovered bottles of prescription medicine belonging to Umberger in the field behind his backyard, leading the police to conclude that the perpetrator had entered Umberger's residence after Umberger fled to his neighbor's residence for assistance.  The police also seized a cap believed to have been left at the scene by the perpetrator.  DNA samples from the cap were uploaded into the Combined DNA Index System (CODIS), and a match notification was generated identifying the defendant.

> The police developed a photographic lineup that included a photograph of the defendant and showed the lineup to Umberger, who identified the defendant as the attacker.  On July 11, 2016, after being advised of his *Miranda* rights and signing a waiver of rights form, the defendant confessed during a police interview.  DNA swabs collected from the defendant at the time of the interview were sent to the St. Tammany Parish Coroner's Office for scientific analysis.  According to Tara Brown Johnson, a forensic DNA analyst at the St. Tammany Parish Coroner's Office, the lab tests, in part, showed that the defendant's DNA was consistent with the major donor of a DNA sample collected from the cap.  At trial, Umberger

---

[4] ECF No. 15-1 at 58, Bill of Information, 2/21/17.
[5] *Id.* at 17, Min. Entry, 3/8/17.

identified the defendant in court and identified the cap as the one worn by the defendant at the time of the incident.[6]

Pittman proceeded to a jury trial on October 23 through 25, 2017, and was found guilty as charged.[7]  The trial court denied Pittman's post-trial motions on December 15, 2017.[8]  The State filed a multiple bill of information alleging Pittman to be a multiple offender.[9]  On October 10, 2018, the state trial court found Pittman to be a second felony offender.[10]  On that same date, the court sentenced Pittman to a term of imprisonment of ten years as to count one, twenty-five years as to count two, and three to ten years as to count three, each term of imprisonment to be served concurrently at hard labor and without the benefit of probation or suspension of sentence.[11]

On direct appeal, Pittman's appointed counsel filed a brief claiming that there were no non-frivolous issues upon which to support the appeal.[12]  Pittman filed a pro se brief in which he asserted three assignments of error: (1) the photographic lineup was unduly suggestive; (2) demonstrative evidence was improperly admitted; and (3) he received ineffective assistance of counsel.[13]

On September 27, 2019, the Louisiana First Circuit Court of Appeal affirmed Pittman's convictions and sentences.[14]  The court determined that the neither the photographs nor the

---

[6] *State v. Pittman*, 2019 KA 0121, 2019 WL 4731643, at *1-2 (La. App. 1st Cir. Sept. 27, 2019) (footnotes omitted); ECF No. 15-5 at 35-36, 1st Cir. Opinion, 2019 KA 0121, 9/27/19.

[7] ECF No.15-1 at 26-32, Trial Mins., 10/23/17; *id.* at 33-39, Trial Mins., 10/24/17; *id.* at 40-42, Trial Mins., 10/25/15; *id.* at 158-60, Verdicts, 10/25/17; ECF No. 15-2 at 2-208, Trial Tr., 10/23/17; ECF No. 15-3 at 2-153, Trial Tr., 10/24/17; *id.* at 154-230, Trial Tr., 10/25/17.

[8] *Id.* at 43-44, Min. Entry, 12/15/17; *id.* at 161, Motion for Post Verdict Judgment of Acquittal, 11/6/17; *id.* at 163, Motion for a New Trial, 11/6/17; ECF No. 15-3 at 231-37, Hearing Tr., 12/15/17.

[9] *Id.* at 165, Multiple Offender Bill of Information, 12/15/17.

[10] *Id.* at 52-53, Multiple Offender Hearing & Sentencing Minutes, 10/10/18; *id.* at 170-72, Reasons for Judgment, 10/25/18; ECF No. 15-3 at 238-47, Multiple Offender Hearing & Sentencing Tr., 10/10/18.

[11] *Id.*; *id.* at 170-71, Reasons for Judgment, 10/25/18; ECF No. 15-3 at 244, Multiple Offender Hearing & Sentencing Tr., 10/10/18.

[12] ECF No. 15-4 at 19-37, Appellate Brief, 2019-KA-0121, 3/12/19.

[13] *Id.* at 56-73, Pro Se Supplemental Brief, 2019-KA-0121, 5/7/19 (signed 5/6/19).

[14] *Pittman*, 2019 WL 4731643, at *1-6 (La. App. 1st Cir. Sept. 27, 2019); ECF No. 15-5 at 33-43, 1st Cir.

identification procedure was unduly suggestive.[15]  The court found that the defense did not object to the admission of the cap at trial and, thus, the issue was not preserved for appellate review, citing La. CODE CRIM. PROC. art. 841(A) and La. CODE EVID. art. 103(A)(1).[16]  Finally, the court found that, because it was more probable than not that the cap was connected to the case and there was no indication that the evidence was compromised, Pittman failed to show ineffective assistance of counsel.[17]  On January 28, 2020, the Louisiana Supreme Court denied Pittman's related writ application without reasons.[18]

On August 17, 2020, Pittman filed a pro se application for post-conviction relief asserting the following claims:[19]

(1) ineffective assistance of counsel in failing to (a) investigate the CODIS DNA hit indicating that the sample taken from the cap matched Pittman's DNA; and (b) object to hearsay evidence pertaining to the CODIS hit in violation of his right to confrontation;

(2) ineffective assistance of counsel in failing to secure an expert to analyze and testify regarding the DNA evidence;

(3) ineffective assistance of counsel in failing to file a motion to suppress the identification of Pittman by the victim;

(4) ineffective assistance of counsel in failing to receive discovery;

(5) ineffective assistance of counsel in failing to investigate Detective Crabtree's statement that he created the photographic line up on April 8, 2016 when the arrest warrant states that the CODIS hit came back on April 18, 2016; and

(6) ineffective assistance of counsel for failure to consult a handwriting expert.[20]

---

Opinion, 2019 KA 0121, 9/27/19.
[15] *Id.* at *3-4; ECF No. 15-5 at 38-40, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.
[16] *Id.* at *4; ECF No. 15-5 at 40-41, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.
[17] *Id.* at *4-5; ECF No. 15-5 at 40-43, 1st Cir. Opinion, 2018 KA 0768, 2/28/19.
[18] *State v. Pittman*, 291 So. 3d 1055 (La. 1/28/20); ECF No. 15-5 at 1, La. S. Ct. Order, 2019-KO-01849, 1/28/20.
[19] ECF No. 15-6 at 47-74, First Uniform Application for Post-Conviction Relief, 9/23/20 (signed August 17, 2020).
[20] *Id.* at 51-52.

4

On November 8, 2021, the trial court denied Pittman's application for post-conviction relief because he had "failed to prove grounds upon which relief shall be granted" and concluded that the application was without merit.[21]  On April 10, 2022, Pittman filed a writ application to the Louisiana First Circuit Court of Appeal.[22]  On July 18, 2022, the Louisiana First Circuit Court of Appeal denied relief without assigning reasons.[23]  On January 18, 2023, the Louisiana Supreme Court denied Pittman's related writ application finding he failed to show that he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).[24]

## II.   **FEDERAL HABEAS PETITION**

On May 4, 2023, Pittman filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[25]  Pittman asserts the following claims: (1) ineffective assistance of counsel for failing to investigate DNA evidence and hire an expert; and (2) ineffective assistance of counsel for failing to investigate the discrepancy between Detective Crabtree's statement in his affidavit in support of the arrest warrant that the CODIS hit came back on April 18, 2016, and his trial testimony that he created the photographic lineup on April 8, 2016 after receiving the CODIS hit.[26]

The State filed a response in opposition to Pittman's petition and conceded that it was timely filed and that his claims are exhausted.[27]  The State asserts that Pittman's claims are

---

[21] ECF No. 15-6 at 120, Order, 11/8/21.

[22] ECF No. 15-7 at 3-77, 1st Cir. Writ Application, 2022 KW 0378, 4/13/22 (signed 4/10/22).

[23] *State v. Pittman*, No. 2022 KW 0378, 2022 WL 2803269 (La. App. 1st Cir. July 18, 2022); ECF No. 15-6 at 131, La. App. 1st Cir. Order, 2022 KW 0378, 7/18/22.

[24] *State v. Pittman*, 358 So. 3d 499 (La. 3/28/23); ECF No. 15-8 at 1-2, La. Sup. Ct. Order, 2022-KH-01387, 3/28/23; ECF No. 15-8 at 3-76, La. S. Ct. Writ Application, 22 KH 1387, 9/13/22 (signed 8/18/22).

[25] ECF No. 1.

[26] ECF No. 1 at 5-7

[27] ECF No. 16 at 6.

meritless.[28]  Pittman filed a reply which includes a memorandum of law in support of his petition

that was not originally filed with his petition.[29]

## III.   **LAW AND ANALYSIS**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28

U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[30] and applies to habeas petitions

filed after that date.[31]  The AEDPA therefore applies to Pittman's petition filed on May 4, 2023.[32]

The threshold questions in habeas review under the amended statute are whether the

petition is timely and whether petitioner's claims were adjudicated on the merits in state court.  In

other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural

default" on a claim.[33]  Here, the State does not seek to time bar Pittman's federal habeas petition,

nor does it claim that state court review has not been exhausted or that any enumerated claim is in

procedural default.[34]  This federal habeas court is thus not barred from reviewing Pittman's claims.

Nevertheless, for the reasons that follow, Pittman is not entitled to federal habeas relief.

---

[28] *Id.* at 7-11.

[29] ECF No. 17; ECF No. 17-1.  .

[30] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[31] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[32] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Pittman dated his signature May 4, 2023.  ECF No. 1 at 14.

[33] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[34] ECF No. 16 at 6.

A. **Standards of a Merits Review**

Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[35] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[36]  The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).  The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[37]  The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[38]

---

[35] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

[36] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

[37] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[38] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry*, 532 U.S. at 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[39]  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[40]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[41]  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[42]  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[43]

## IV.    PITTMAN'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Pittman alleges multiple instances of ineffective assistance of trial counsel.  Specifically, he asserts his trial counsel was ineffective in failing to properly investigate the DNA evidence and consult with an expert witness.  In conjunction with this claim, he argues that the evidence was contaminated and that his counsel failed to inquire about the handling and testing of the DNA

---

[39] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[40] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

[41] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

[42] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[43] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

samples or whether cross-contamination was the reason for the presence of Pittman's DNA on the cap.[44]  He further claims that his counsel was ineffective in failing to investigate the discrepancy between Detective Crabtree's statement in his affidavit in support of the arrest warrant that the CODIS hit came back on April 18, 2016, and his trial testimony that he created the photographic lineup on April 8, 2016 after receiving the CODIS hit.[45]

### A. <u>State Court Rulings</u>

In his application for post-conviction relief, Pittman argued that his counsel was ineffective in failing to investigate the CODIS hit, consult with an expert regarding the DNA evidence, and investigate the discrepancy in dates relating to the CODIS hit and the photographic line up.[46]  The trial court denied the claims.[47]  The Louisiana First Circuit Court of Appeals denied relief without reasons.[48]  The Louisiana Supreme Court denied Pittman's related writ application, finding that he failed to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).[49]

### B. <u>AEDPA Standards and *Strickland*</u>

The issue of ineffective assistance of counsel is a mixed question of law and fact.[50]  Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

---

[44] ECF No. 17 at 1-2.

[45] *Id*. at 3.

[46] ECF No. 15-6 at 50-72, Memorandum in Support of Uniform Application for Post-Conviction Relief, 9/17/20.

[47] ECF No. 15-6 at 120, Order, 11/8/21.

[48] *Pittman*, 2022 WL 2803269, at *1; ECF No. 15-6 at 131, La. App. 1st Cir. Order, 2022 KW 0378, 7/18/22.

[49] *Pittman*, 358 So. 3d at 499; ECF No. 15-8 at 1-2, La. Sup. Ct. Order, 2022-KH-01387, 3/28/23.

[50] *Strickland v. Washington*, 466 U.S. 688, 698 (1984); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

The United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[51]   The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[52]   Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[53]

In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[54]   A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[55]

On habeas review, the United States Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[56]   "Even under de novo review, the standard for judging counsel's representation is a most deferential one."[57]   The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[58]

---

[51] 466 U.S. at 697.

[52] *Id.* at 687-88.

[53] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[54] *Kimler*, 167 F.3d at 893.

[55] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

[56] *Harrington*, 562 U.S. at 105.

[57] *Id.*

[58] *Strickland*, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.[59]  "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence."[60]  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.[61]  Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance.[62]

### C. DNA Evidence

As indicated, Pittman claims that his counsel was ineffective in failing to investigate the DNA evidence and consult an expert to analyze the cap and the hair samples taken therefrom.  In essence, Pittman claims that the hairs found in the cap were not his and that "[t]he DNA evidence would have definitely proven that petitioner was not present at the scene of the alleged robbery and would have identified the perpetrator of the crimes for which petitioner was found guilty."[63] He claims that a DNA sample showed a major donor from the Hispanic community and that "[t]esting by counsel would have definitively ruled petitioner out as a donor of DNA on the only evidence from the scene."[64]  Pittman further claims that his counsel should have filed a motion to suppress the DNA evidence due to the "unscrupulous methods used in producing the results from the DNA examinations using evidence that was already contaminated."[65]

---

[59] *Id.* at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

[60] *Harrington*, 562 U.S. at 105.

[61] *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

[62] *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997); *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

[63] ECF No. 1 at 5.

[64] *Id.*

[65] ECF No. 17-1 at 9.

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[66]  However, the defense of a criminal case does not "contemplate the employment of wholly unlimited time and resources."[67]  An attorney is not necessarily ineffective for failing to investigate every conceivable, potentially nonfrivolous matter or defense.[68]  Instead, a petitioner who asserts a claim of a failure to investigate by counsel, "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"[69]  To prevail on such a claim, the petitioner must provide factual support, not mere speculation, to establish what exculpatory evidence would have been discovered or revealed through further investigation by his counsel.[70]  Even if the attorney failed to conduct a reasonable investigation, the petitioner is still required to show prejudice resulting from that failure.[71]

Pittman presents no objective evidence at all to establish that his counsel failed to conduct a proper investigation.  Here, the record shows that counsel actively engaged in discovery and that discovery was provided to the defense.[72]  Additionally, counsel's questioning of the witnesses at trial demonstrates that he was prepared and informed.

---

[66] *Strickland*, 466 U.S. at 691; *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

[67] *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992).

[68] *Id.*

[69] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted); *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011); *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.") (citing *Strickland*, 466 U.S. at 696).

[70] *Moawad*, 143 F.3d at 948; *Cox v. Stephens*, 602 F. App'x 141, 146 (5th Cir. 2015) ("[b]are allegations" that counsel failed "to make an adequate investigation of potential witnesses" were insufficient to warrant relief).

[71] *Lockhart*, 782 F.2d at 1282.

[72] ECF No. 15-1 at 66-74, Notice of Intention to Use Certificate of Analysis, 3/9/17; *id.* at 75-77, State's Answer to Motions for Discovery and Inspection and State's Motion for Discovery and State's Notice of Intent to Introduce Evidence of Other Offenses, 3/14/17 (noting open file discovery); *id.* at 79-80, Stipulation for Reciprocal Discovery, 4/4/2017; *id.* at 81, Order, 3/31/17; *id.* at 82-90, Notice of Intention to Use Certificate of Analysis, 4/12/17; *id.* at 91-102, Notice of Intention to Use Certificate of Analysis,

Pittman generally faults his counsel for failing to investigate the DNA evidence.  However, Pittman offers no evidence that his trial counsel did not in fact investigate the DNA evidence.  Bare speculation does not suffice to meet a petitioner's burden of proof.[73]  Without evidence proving that counsel failed to investigate the DNA evidence, Pittman has not established that counsel's investigation was deficient.

Pittman also faults his counsel for failing to move to suppress the DNA evidence.  The record, however, reflects that defense counsel filed a motion to exclude the DNA evidence, which was denied after a hearing.[74]  The fact that defense counsel's effort to challenge the admissibility of the DNA evidence were unsuccessful does not render counsel ineffective.[75]

With regard to Pittman's related claim of ineffective assistance of counsel in failing to secure an expert, the law is well settled that an indigent defendant does not have an automatic right to expert assistance, even upon demand.[76]  Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial."[77]  The requirement that the petitioner establish

---

5/2/17; *id.* at 103-07, Motion to Require Prosecution to Disclose Favorable Evidence, 10/23/17; *id.* at 108-10, Defendant's Motion for Discovery Pursuant to La. Code Criminal Procedure Articles 716, *et seq.*, 5/3/17.

[73] *See Massey v. Cain*, No. 14-2952, 2016 WL 5376239, at *10 (E.D. La. June 21, 2016), *R&R adopted*, 2016 WL 5362992 (E.D. La. Sept. 26, 2016); *see also Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions of a critical use in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

[74] ECF No. 15-1 at 138-40, Motion in Limine to Exclude Alleged DNA Match, 10/23/17; *id.* at 33, Trial Min., 10/24/17; *id.* at 141, Order, 10/24/17; ECF No. 15-3 at 4-21, Trial Tr., 10/24/17.

[75] *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."); *Baker v. United States*, Cr. No. 07-435, 2011 WL 3841690, at *13 (E.D. Va. Aug. 30, 2011) ("the record shows [counsel] effectively advocated on Petitioner's behalf by making a timely, reasonable objection . . . [t]hus, counsel's actions were effective notwithstanding their lack of success....").

[76] *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993).

[77] *Id.*; *Griffith v. Quarterman*, 196 F. App'x 237, 243 (5th Cir. 2006); *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687).

prejudice based on his counsel's failure to call a witness by the naming the witness, setting forth the proposed testimony, demonstrating that the witness was available and would have testified and showing the testimony would have been favorable to his defense applies to both lay and expert witnesses.[78]   Despite this standard, Pittman merely claims that the hairs found in the cap, which were found unsuitable for DNA by the State's expert,[79] were not his and that a defense expert would have testified that his DNA was not on the cap.  He has presented no evidence demonstrating that an expert was available nor has he identified an expert who was available and willing to testify in a manner favorable to a particular defense.[80]   Pittman simply provides self-serving, speculative, and conclusory allegations that an unidentified expert witness would have in fact testified and would have done so in a manner favorable to the defense.  As a result, this court cannot find counsel ineffective for failing to present the testimony of a purely theoretical expert.[81]

Pittman's arguments on this point are wholly speculative.  Again, he has identified no actual evidence to contradict the trial evidence or the highly technical testimony of the State's DNA expert, Tara Brown, who testified that she was able to exclude the victim, Reed Umberger, and the original suspect, Aaron Cowart, as well as all male relatives along their paternal lineages, as the DNA donors of the DNA found on the cap.[82]   Brown testified that the major DNA donor haplotype obtained from a swab of the bill of the cap was consistent with the haplotype obtained from Pittman.[83]   She further explained that she had to exclude one location from the statistical

---

[78] *Woodfox*, 609 F.2d at 808 (citing *Day*, F.2d 566 at 538).

[79] *See* ECF No. 15-1 at 73, Scientific Analysis Report, 3/18/16 ("The suspected hair (Exhibits 1E and 1F) failed to produce haplotypes due to insufficient or excessively degraded male DNA.").

[80] *See Scott v. Louisiana*, 934 F.2d 631, 633 (5th Cir. 1991).

[81] *See, e.g.*, *Anthony v. Cain*, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("Petitioner has furnished neither the state courts nor this Court any evidence to show that an expert would have disputed Dr. Benton's conclusions.  Petitioner has, therefore, failed to establish that counsel was ineffective in failing to call such an expert witness.").

[82] ECF No. 15-3 at 166-68, Trial Tr., 10/25/17.

[83] *Id.* at 179, 187-89.

analysis because it was a multicopy locus below a certain threshold, and, as a result, she could not exclude "a very small portion" of three populations, specifically .15 percent of the African American population, 07 percent of the Caucasian population, and .18 percent of the Hispanic population.[84]   Brown testified, however, that in comparing the results of the DNA on the bill of the cap with Pittman's DNA profile, she was able to include him as the major donor.[85]

While defense counsel did not present testimony of a defense expert, defense counsel attempted to raise doubt as to the veracity of Brown's testimony.   As explained above, first defense counsel sought to exclude the DNA evidence, albeit unsuccessfully.[86]   On cross-examination, defense counsel questioned Brown about whether the profile was complete and whether there was a mixture of several DNA donors.[87]   Defense counsel also had Brown concede that Pittman was excluded from the DNA found on the adjustable strap.[88]   Contrary to Pittman's claim, defense counsel questioned Brown about chain of custody and contamination, including the transfer of DNA.[89]   Brown agreed it was possible that if someone touched the hat without gloves that person's DNA could be on the hat.[90]   She further admitted that she did not compare Deputy Olivier's DNA to swabs for the hat.[91]   Brown admitted that there could be other people who were not ruled out,

---

[84] *Id.* at 180.

[85] *Id.*

[86] ECF No. 15-1 at 138-40, Motion in Limine to Exclude Alleged DNA Match, 10/23/17; ECF 15-3, at 2-21, Trial Tr., 10/24/17.

[87] ECF 15-3 at 181, Trial Tr., 10/25/17.

[88] *Id.* at 182.

[89] *Id.* at 183-84.   Defense counsel also questioned Deputy McGeever and Deputy Engel about possible contamination and transfer of DNA.   *Id.* at 66-68, 80-82, Trial Tr., 10/24/17.

[90] *Id.* at 183-84.

[91] *Id.* at 184.   Prior to Brown's testimony, Deputy McGeever testified that Deputy Ronald Olivier with the K-9 unit used the cap to acquire a scent to conduct a track of the suspect's movements.   *Id.* at 61, 67, Trial Tr., 10/24/17.   Deputy McGeever testified that, as a result, it appeared that the hat was moved from its original location in the kitchen.   *Id.* at 68.   Deputy Engel testified that it was possible that Deputy Olivier touched the cap and that he and that the canine could have transferred DNA onto it.   *Id.* at 82.

but testified that they never received notification from CODIS of another potential match.[92]  "[A] decision to attack the state's expert witnesses on cross-examination rather than calling additional experts can be a part of a reasonable trial strategy."[93]  And defense counsel argued in closing argument that the DNA was contaminated  due to multiple people touching the hat.[94]  Defense counsel argued that there was reasonable doubt because "no one knows whose DNA that is or where it came from."[95]

Ultimately, Pittman has presented no proof beyond his own speculation that an expert witness was needed or could have offered any specific support to his defense.  Nor has he shown any resulting prejudice from his counsel's attack of the State's expert on cross-examination instead of hiring an expert.  The lack of prejudice is especially true given that Pittman gave a voluntary statement that he approached the victim, asked for money, and injured the victim when a struggle ensued.[96]  During his statement, Pittman further admitted that he entered the victim's home, took medication, and fled the scene.[97]

The fact that his defense was not successful and he was convicted does not mean that counsel's actions were deficient.[98]  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[99]  The state courts reasonably concluded that Pittman is not entitled to relief under *Strickland*.  Pittman is not entitled to relief as to these claims.

---

[92] *Id.* at 186.

[93] *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007).

[94] ECF 15-3 at 199, Trial Tr., 10/25/17.

[95] *Id.* at 201.

[96] *See id.* at 102-07, 118-20, Trial Tr., 10/24/17 (Detective Vasquez); ECF No. 15-6 at 65, Notes Signed by Brian Pittman, 7/11/16.

[97] ECF No. 15-3 at 106; ECF No. 15-6 at 65, Notes Signed by Brian Pittman, 7/11/16.

[98] *See Martinez*, 99 F. App'x at 543.

[99] *Strickland*, 466 U.S. at 689.

### D.  **CODIS Hit**

Pittman further claims that his counsel was ineffective in failing to investigate the discrepancy between Detective Crabtree's statement in his affidavit in support of the arrest warrant that the CODIS hit identifying Pittman as a match for the DNA sample came back on April 18, 2016, and his January 12, 2017 supplemental report and his trial testimony that he created the photographic lineup on April 8, 2016.

The State responds that the discrepancy in the date on which the photographic lineup was created appears to be a result of a clerical error.  The State continues that either the lineup was created on April 8, 2016 and that Detective Crabtree mistakenly included the "1" when preparing his affidavit, or the lineup was created on April 18, 2016 and Crabtree mistakenly omitted the "1" in his supplemental report and simply misspoke at trial.  The State concludes that the discrepancy in dates was immaterial and that Pittman fails to show prejudice.

According to the affidavit in support of the arrest warrant dated May 2, 2016, Detective Crabtree stated that he received notification of a CODIS Database match from the DNA from the cap to Pittman on April 18, 2016.[100]  As a result, Detective Crabtree prepared a photographic lineup.[101]  On April 27, 2016, Detective Crabtree presented the lineup to the victim who immediately identified image number five (Pittman) as the perpetrator.[102]

At trial, Detective Crabtree generally testified that in April 2016 the CODIS Database matched the DNA from the cap to Pittman.[103] Detective Crabtree explained in more detail that on April 8, 2016 he utilized a computer program to generate a six person photographic lineup

---

[100] ECF No. 15-6 at 55, Affidavit of Detective Timothy Crabtree, 5/2/16.
[101] *Id.*
[102] *Id.*
[103] ECF No. 15-3 at 122, Trial Tr., 10/24/17.

including Pittman, the subject in the CODIS hit.[104]  Crabtree identified the lineup.[105]  Crabtree explained that he called the victim and asked to meet with him.[106]  Umberger met with Crabtree later in April at which time Crabtree showed the victim the photographic lineup.[107]  According to Crabtree, Umberger immediately pointed to the person depicted in image number five, and identified the person depicted, Pittman, as the perpetrator.[108]

Umberger testified at trial that, about a year after the incident, he met with Detective Crabtree who showed him a photographic lineup.[109]  Umberger testified that he identified the person depicted in position number five as the perpetrator.[110]  Umberger was adamant that Pittman was the perpetrator.[111]

As noted, Pittman also points to a January 12, 2017 St. Tammany Parish Sheriff's Office supplemental report wherein Detective Crabtree stated in the narrative that he prepared the photographic lineup on April 8, 2016.[112]  In that narrative, Crabtree further stated that he contacted Umberger on April 8, 2016 and requested him to meet with him to speak about the case.[113]  Pittman claims that Crabtree lied in his affidavit.  Pittman questions the evidence Crabtree used to develop him as a suspect if the CODIS hit did not come back until April 18, 2016, ten days after Crabtree generated the photographic lineup.  He argues that his counsel should have filed a motion to quash the arrest warrant.

---

[104] *Id.* at 123, 130-31.
[105] *Id.* at 123-24.
[106] *Id.* at 124.
[107] *Id.* at 124, 129.
[108] *Id.* at 124-25, 131-32.
[109] *Id.* at 145.
[110] *Id.* at 145-46.
[111] *Id.* at 147, 151-52.
[112] ECF No. 15-6 at 62, St. Tammany Parish Sheriff's Office Supplement Narrative Continuation, 1/12/17.
[113] *Id.*

Whether to file a motion is generally considered to be a matter of litigation strategy, and counsel's actions may not be considered deficient if, under the circumstances, the challenged action might be considered sound trial strategy.[114]    Counsel is not required by the Sixth Amendment to file meritless motions.[115]

An arrest warrant affidavit is presumed to be valid.[116]  "Probable cause for an arrest exists when the facts and circumstances known to the police and of which the police have reasonably trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed a crime."[117]  Minor inaccuracies in the assertions in a probable cause affidavit may not affect the validity of the warrant.[118]  The burden is on the defendant to prove by a preponderance of the evidence that the representations in the affidavit are false.[119]

Pittman fails to meet that burden.  It is apparent that one of the April 2016 dates was incorrect likely due to a typographical error.  Pittman presents no actual evidence that the date in the affidavit is in fact the incorrect date.  Regardless, even if the April 18, 2016 date in the affidavit were incorrect, there is no evidence to suggest that Detective Crabtree attempted to defraud the judge who issued the arrest warrant by knowing or intentionally misrepresenting in his affidavit the date of the CODIS hit.  Detective Crabtree stated in his affidavit that he received notification that a specimen from the cap produced a CODIS Database match to Pittman.[120]  After learning that the match belonged to Pittman, Crabtree created a photographic lineup including Pittman's

---

[114] *Jackson v. Thaler*, 358 F. App'x 585, 586 (5th Cir. 2009)(citing *Strickland v. Washington*, 466 U.S. at 689).

[115] *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

[116] *State v. Sheil*, 204 So. 3d 1213, 1217 (La. App. 5th Cir. 12/7/16) (citation omitted).

[117] *State v. Williams*, 448 So. 2d 659, 662 (La. 2/27/84); *State v. Wilkens*, 364 So. 2d 934 (La. 11/13/78); *State v. Johnson*, 363 So. 2d 684 (La. 11/9/1978); *State v. Marks*, 337 So. 2d 1177 (La. 10/6/76).

[118] *Williams*, 448 So. 2d at 662.

[119] *Id.* (citations omitted).

[120] ECF No. 15-6 at 55, Affidavit of Detective Timothy Crabtree, 5/2/16.

image and presented it to the victim.[121]   The victim immediately identified Pittman as the perpetrator.[122]   Crabtree consistently testified that, only after he received the CODIS hit, he prepared the lineup and met with Umberger who identified Pittman as the perpetrator from the photographic lineup.[123]   Only thereafter did he prepare the affidavit in support of the arrest warrant.[124]

While Pittman also appears to claim that his counsel should have questioned Crabtree about the discrepancy, the method and scope of cross examination is a type of trial strategy for which counsel is granted reasonable latitude.[125]   The federal courts have made clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."[126]   There is a strong presumption that counsel has exercised his professional judgment reasonably.

While defense counsel did not specifically question Detective Crabtree about the discrepancy in dates between his report and trial testimony and the affidavit, Pittman has not offered any evidence to demonstrate that this failure altered the outcome of his trial.   Pittman's conviction was not based on the apparent typographical error relating to the date of the CODIS hit in either the search warrant or the supplemental report.   Rather, his conviction was based on the

---

[121] *Id.*

[122] *Id.*

[123] ECF 15-1 at 187-90, Hearing Tr., 8/7/17; ECF 15-3 at 122-25, 129-31, Trial Tr., 10/24/17

[124] ECF No. 15-3 at 126.

[125] *See United States v. Octave*, No. 12-205, 2015 WL 6620117, at *6 (E.D. La. Oct. 30, 2015) (citing *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011)).

[126] *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *accord Lewis v. Cain*, No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App" 835 (5th Cir. 2011); *Williams v. Cain*, Nos. 06-0224 and Nos. 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Parker v. Cain*, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).

credible testimony of the victim who identified Pittman as the perpetrator, the law enforcement officers, the DNA evidence, and Pittman's confession.

The state courts' denial of relief was not contrary to or an unreasonable application of *Strickland*.  Pittman is not entitled to relief on this issue.

### **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Brian Pittman's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[127]

New Orleans, Louisiana, this _____5th_____ day of December, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[127] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)).  *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).