U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   Dec 29 2023

CAROL L. MICHEL
CLERK

SMS                Mail

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRIAN HENRY PITTMAN #583397          CIVIL ACTION N°.: 23-CV-2071

VERSUS                                DISTRICT JUDGE:

KEITH COOLEY, WARDEN                 MAGISTRATE JUDGE: DONNA
                                      PHILLIPS CURRAULT,
                                      SEC. "J"(2)

### OBJECTION TO THE HONORABLE
### JUDGE CURRAULT'S REPORT AND RECOMMENDATION

To The Honorable Judge of Said Court:

Comes now Brian Henry Pittman, N°. 583397, *pro se*, and respectfully files this Objection to the Honorable Judge Currault's Report and Recommendation (R & R). Judge Currault's R & R was received on December 7, 2023 (see attachment); this objection is timely filed within the fourteen (14) day requirement.

I.

### INEFFECTIVE ASSISTANCE OF COUNSEL

**A. Trial Counsel's Failed to Properly Investigate DNA Evidence from Cap**

The importance of the DNA evidence and counsel's failure to fully investigate in this case has been minimized through Judge Currault's Report and Recommendation. Counsel's desire to hire an expert but failing to do so proved detrimental to Pittman. The Court of Appeal, Fifth Circuit has observed that because an accused's trial can be seriously affected by the action of his attorney in preparing a case, effective counsel must conduct a reasonable amount of pretrial investigation. *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985).

1

The cap, collected from the scene, was the source of the DNA used to tie Pittman to this crime. The cap used for testing was contaminated evidence; this cap was handled by several officers and ultimately moved from its original location. This is paramount because the alleged DNA match came from the bill of the cap. The bill of the cap is the portion that is the furthest away from the body and the portion of the cap that is most accessible by individuals handling the cap. The manufacturer's tag, the sweatband, and the inside of hat—which are the closest to an individual's body—contained no DNA from Pittman. This is significant in a case where trial counsel knew that the evidence from the scene was contaminated and stated that it could not be determined "whose DNA that is [on the bill of the hat] or where it came from." The State also conceded that the evidence was indeed contaminated.

Courts judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The Strickland Court also held that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* In *Wiggins v. Smith* the supreme court clarified that "in Strickland we defined the deference owed such strategic judgments in terms of the adequacy of the investigations supporting those judgments and emphasizing that the court's focus in failure to investigate claims is whether the investigation supporting counsel's decision ... was itself reasonable." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).

Pittman told his trial counsel that the cap did not belong to him. Because no further testing was done by counsel on the cap and Pittman could not afford to hire an

2

independent expert to test the cap (considering his indigency), the assertion that the cap did not belong to Pittman and that the cap contained two (2) hair follicles should have been enough to warrant further investigation by trial counsel. Pittman had no way to determine if an expert was available to testify concerning the findings of the DNA on the cap. Pittman relied exclusively on counsel to follow through on what had been communicated to him. At no time did counsel tell Pittman that an expert was not going to be called and further testing not going to be done. Counsel instead relied on the State's claim that the hair samples were too degraded to pull any useful data from. A second opinion was needed in this case and for trial counsel to not get that second opinion should not be seen a trial strategy. It should be seen as ineffective assistance of counsel.

    An expert would have helped the jury to understand the ramifications of cross-contamination and also would have definitively stated whether or not the sample included DNA from Deputy Olivier and whether the hair samples were "too degraded to pull any useful data" and whether those hairs belonged to Pittman. None of these things could have been determined by counsel; counsel lacked the requisite training and knowledge to make such an assessment. Judge Currault reasoned that trial counsel's preparedness can be ascertained by counsel's questioning of the witnesses at trial. (R.R. at p. 12). The Fifth Circuit has rejected this type of reasoning concerning counsel's failure to investigate. In *Bryant v. Scott*, the court expressly rejected the notion that vigorous cross-examination of [a] [witness] at trial can cure counsel's failure to [prepare] before trial. Effective cross-examination does not necessarily indicate that a reasonable lawyer, viewing the trial *ex ante*, would have regarded an interview of [witnesses] unnecessary. *Bryant v. Scott*, 28 F.3d 1411, 1418-19 (5th Cir. 1994). Although the Bryant case involved counsel's failure

to interview alibi and eyewitnesses, Pittman presented to this court that trial counsel's reliance on the State's testing alone of the DNA evidence without an independent investigation and testing with an expert witness placed Pittman at a severe disadvantage. The injury is the same that Bryant endured; the DNA evidence was very important to Pittman's case which warranted counsel's proper investigation.

In *Bower v. Quarterman*, the court's position that a decision to attack the state's expert witnesses on cross-examination rather than calling additional experts came after the record was expanded following a five-day evidentiary hearing. *Bower v. Quarterman*, 497 F.3d 459, 466 (5th Cir. 2007). Bower's attorney—Jerry Buckner—provided a very detailed account of what was done in preparation for trial. It was this record, when analyzed under case law, that led the court to conclude that Buckner did not fail to conduct a constitutionally sufficient investigation. "Based on the evidentiary record before it, the district court made specific findings...." *Id.* at 468. No evidentiary hearing has been held in this case. Pittman would benefit greatly, along with this Honorable Court, through the taking of evidence at an evidentiary hearing.

**B. Trial Counsel failed to investigate the CODIS hit which resulted in Pittman being developed as a suspect and added to a photo lineup.**

Judge Currault relied on the State's assertion that the discrepancy between the date of the CODIS hit and the creation of the photo lineup was a clerical error. Counsel had a responsibility to vet the information contained in the affidavit for arrest. Counsel had means to determine: (1) when the alleged CODIS hit came back from the St. Tammany Parish Coroner's Office (STPCO); (2) when Det. Crabtree authored/created the photo lineup containing Pittman. The veracity of Det. Crabtree's statements should have been challenged at trial. Clerical errors can be clarified through an explanation of

4

how the error was committed, if the opportunity for clarification is given. The opportunity for clarification presented itself when Det. Crabtree testified at trial that the six-pack photographic lineup was prepared on April 8, 2016. At no time during his testimony did Det. Crabtree look to clarify the information presented in the application for arrest warrant that he authored. There was no discussion as to the difference in dates between when the alleged 'CODIS Hit' was delivered to him by STPCO and his rendering of a six-pack photo lineup. Neither the State nor the Defense looked to provide clarity.

The court cited *State v. Williams* to assert the position that minor inaccuracies in the assertions in a probable cause affidavit may not affect the validity of the warrant but pretermitted the Williams' court statement that if intentional misrepresentations designed to deceive the issuing magistrate are made by the affiants seeking to obtain the warrant, the warrant must be quashed. Alternatively, if unintentional misstatements are included these misstatements must be excised and the remainder used to determine whether or not probable cause for the issuance of a warrant is set forth. *State v. Williams*, 448 So.2d 659, 663 (1984) (citation omitted). This approach was used by the Court of Appeal, Fifth Circuit. In *U.S. v. Thomas*, that court noted that when faced with an affidavit containing inaccurate statements the preferred approach is to excise the inaccurate statements and then examine the residue to determine if it supports a finding of probable cause. *U.S. v. Thomas*, 489 F.2d 664, 669 (5th Cir. 1973), *cert. denied*, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). "Therefore, we hold that affidavits containing misrepresentations are invalid if the error (1) was committed with the intent to deceive the magistrate, whether or not the error is material to the showing of probable cause; or (2) made non-intentionally, but the erroneous statement is material to the establishment of probable cause [ ]." *Id.*

5

As noted previously, proper investigation by trial counsel into the discrepancy between the date of the CODIS Hit and the creation of the six-pack lineup would have led counsel to file a Motion to Quash the Arrest Warrant pretrial. Counsel was aware that the DNA in this case was faulty. Since Det. Crabtree based the affidavit's probable cause on the CODIS Hit, probable cause should have been challenged because Det. Crabtree failed to disclose any facts upon which the existence of probable cause could have been found. Even counting the misrepresentation as unintentional, the excised information would have eliminated the probable cause needed for the magistrate judge to grant the warrant. Det. Crabtree explains in the supplemental narrative how Aaron Cowart was developed as a possible suspect but nowhere in the narrative is it explained how Mr. Pittman was developed as a suspect with the exception of the six-pack lineup and the victim's subsequent identification of Mr. Pittman. No identifying features of Mr. Pittman was given by the victim. No other physical evidence tying Mr. Pittman to the crime was discovered. Because the arrest warrant was never challenged, it cannot be determined what additional information – if any – was provided to Judge Hand by Det. Crabtree to secure the arrest warrant whether verbally or in writing. Although counsel filed motions to suppress statement and a motion to suppress identification, no motion was filed to challenge the arrest warrant and the finding of probable cause. Mr. Pittman was prejudiced by counsel's failure to file a motion to quash the arrest warrant because the arrest warrant set off a chain of events that deprived Mr. Pittman of his constitutionally protected right to life, liberty, property, due process and equal protection of the law. See U.S. Const. Amend. 5 and 14; See also La. Const. of 1974 Article 1 § 2. The Fourth Amendment to the U.S. Constitution provides, "… no warrant shall issue, but upon

probable cause, supported by oath or affirmation …" The Louisiana Constitution of 1974 Article 1 § 5 echoes this same requirement.

## CONCLUSION AND PRAYER

For the foregoing reasons and in the interest of justice, Pittman prays this Honorable Court rejects Judge Currault's Report and Recommendation and grants the Writ of Habeas Corpus finding that the state courts' decision is contrary to or involves an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Alternatively, Pittman prays that an evidentiary hearing be granted where the record could be expanded and additional evidence presented to support the claim of ineffective assistance of trial counsel.

Respectfully submitted this 21st day of December, 2023, at Kinder Louisiana.

*Brian Pittman, # 583397*

Brian Henry Pittman, N°. 583397
Allen Correctional Center
3751 Lauderdale Woodyard Rd.
Kinder, LA 70648

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS, LA 70130

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE: $300

Received ALC Mailroom

DEC 07 2023

Kinder, LA 70648

mer D236

Brian Henry Pittman 5833
Allen Correctional Center
3751 Lauderdale Woodyard
Kinder, LA 70648
US

Case: 2:23-cv-02071  #18
24 pages.
Tue Dec  5 11:41:09 2023





Allen Correctional Center
Inmate Correspondence Not Generated